# Salsbury *versus* The City of Philadelphia.

*Liability of Municipal Corporation on an implied Contract for support of Pauper.*

1. A city corporation is not liable in *assumpsit* to a grandmother for boarding her minor grandchildren, who were a city charge, except upon an express contract.

2. Where no such contract was proved, nor any evidence thereof except a book, in which the plaintiff had made charges against the city, and credited the amounts received from the guardians of the poor, the instruction of the court on the trial that there was no evidence upon which she could recover, was not error.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit* brought, August 6th 1861, by Mary Salsbury against The City of Philadelphia, to recover an amount alleged to be due to her for the support of two deserted children. A declaration in *assumpsit* with the common counts was filed, to which the plaintiff pleaded *non assumpsit.*

On the trial, there was a verdict in favour of the plaintiff, the learned judge, before whom the case was tried, reserving the point whether there was any evidence to go to the jury. On which point judgment was subsequently entered for defendants.

All the material facts of the case will be found in the opinion of this court.

[Salsbury *v.* City of Philadelphia.]

*George M. Conarroe,* for plaintiff in error, argued—1. Defendants are bound to support the poor who are charges upon them: Act of 13th June 1836, § 1.  4 P. L. J. 539.   The grandmother is only liable for support of grandchildren where the father is unable, or cannot be reached, and when she is "of sufficient ability :" Sec. 28 of same act.  Here the father was within reach, and of sufficient means, while the evidence of the defendants' own agent is that the grandmother was not able to support the children.   The liability of the father does not relieve defendants from their liability: 5 W. & S. 536.   In this case there is nothing to show that, with proper care, the support by the father could not have been compelled.   The defendants are now endeavouring to avoid an expense which they have incurred by their own negligence in taking insufficient security.   Neglect of duty towards paupers, even temporarily chargeable to a district, is severely reprobated by Judge Burnside in 9 Barr 48 ; and certainly it is clear that these unfortunate and deserted children were to be cared for at the public expense.   This was not a case of "out-door relief."   Out-door relief is given to parties who are visited periodically by visitors of the poor at their homes. This was an ordinary case under the desertion laws, of children deserted by their father, and the proceedings were those usual in such cases.   2. In this case there was evidence to go to the jury proving that defendants had formally assumed the support of these children ; that defendants had contracted with plaintiff for their board, at a sum which was just and reasonable.   3. If the defendants wished to stop the contract they should have so notified the plaintiff, and removed the children to the almshouse. Not having so done, they cannot now be permitted to escape from their just liability.

*David W. Sellers,* for defendants, contended—1. That the relief to be furnished by the guardians was wholly voluntary and within their discretion, and that no suit could lie at law *ex contractu.*

2. That if it were not voluntary, it was necessary for the plaintiff to show—1. That she had applied for relief.   2. That a visitor of the poor had made a report in writing, upon her application to the board of guardians.   3. That a majority of the board of guardians had at a stated meeting granted her relief, which could only be proven by the minutes of said board, which was not done.   It was further contended that if the book given to her created the presumption of a grant of out-door relief by said board, yet that such a grant could be presumed only for six months, because the board had no power to grant relief for any longer time.   Relief once granted, fell at the end of six months, except renewed.   The proceeding referred to, by which

[Salsbury *v.* City of Philadelphia.]

the father was arrested by the guardians for the support of his children, were proceedings solely intended to indemnify them for any relief they might grant. They could grant relief without such indemnity, but the taking of it could not alter their discretion, or change the liability of the city of Philadelphia. These proceedings were had under the provisions of a further supplement to the above acts, approved March 26th 1846, P. L. 173; the object of which was to get from the father such amount as would indemnify the guardians for the relief they should grant to deserted children, who were a charge on the city. It would no doubt happen often that the guardians would grant the same amount of relief, as the judge would order the father to pay or secure to be paid; but it does not appear they were or are bound to do so. They might prefer to maintain the children in the almshouse, or they might grant a larger amount. It was submitted that the true construction of any contract which would rest upon the book referred to, was that the plaintiff should receive from the guardians the amount they should collect on the bond. It was not proven nor suggested that she had not. There was no count in the *narr.* that the city had failed in any duty. The record showed that the surety and principal had become insolvent. The book is rather an account with the father. It certainly is not in terms an account with the plaintiff. It was further contended that, as the plaintiff below was the grandmother, and had maintained these two children for nearly six years, this was almost conclusive that she had no claim on the guardians. It was affirmative evidence of the highest kind that she was of sufficient ability, and as by law the guardians could have compelled her to support these children, she could not recover for what she ought to have done.

The opinion of the court was delivered, February 23d 1863, by STRONG, J.—This was an action of *assumpsit*, brought to recover compensation for boarding during a period of nearly six years two children of one Edwin H. Weaver. The plaintiff was the grandmother of the children, and she contended that the city had contracted with her to pay for their board at the rate of $3 per week. The father had deserted them, and under the desertion laws proceedings were instituted against him, and he was compelled to give bond in the penal sum of $600, conditioned for the payment of such sums of money as the judge of the Court of Quarter Sessions should think reasonable for the maintenance of the children deserted. The bond proved worthless. On the trial of the action in the District Court, a verdict was returned for the plaintiff, subject to a point reserved, which was, "whether any evidence had been adduced touching the

8 WR.—20

[Salsbury *v.* City of Philadelphia.]

defendant's liability," or as we understand it, tending to show the defendant's liability.

It is manifest that the city is not liable, unless there was a contract with the plaintiff. And the law implied no such contract from anything which was given in evidence, certainly not from the facts that the children were a city charge, and that the grandmother had boarded them. Admit that the city is under obligations to provide for the poor, yet it does not follow that it is under obligations to pay those who voluntarily contribute to their support. If such were the measure of its duty, the provision made under the directions of the law, to support paupers in its almshouse, would be an idle expenditure. If, in such a city as this, the law presumed a promise by the city to pay any person who may support a pauper a compensation for such support, few paupers would find their way to the almshouse; unknown and unexpected claims, in vast numbers, would be forced upon the treasury, and juries, instead of the guardians of the poor, would determine what should be the amount of public expenditure. That would be not only against the policy of the entire body of legislation respecting the poor, but against the plain principles of the common law. No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other. There was nothing, then, in any evidence adduced on the trial to raise any implication of a promise to pay to the plaintiff. And especially is this true, when it is considered that she was the grandmother of the children, and as such was under obligations to support them, if she was of sufficient ability.

It remains to consider whether there was any evidence of an express contract obligatory upon the city. We cannot find it in the record. No witness proves such a contract, or anything which tends to show that one was made. A book was given in evidence, entitled "Edward H. Weaver, for the support of two children, $3 per week," and containing entries of sundry sums of money on account, which the guardians of the poor had paid at different times, from November 1st 1855 to January 2d 1860. This was, however, no evidence of any contract with the plaintiff. And under the Acts of Assembly relative to the support of paupers in Philadelphia, the guardians had no power to make any such contract. They have power to grant out-door relief in money not exceeding six months, by resolution, at a stated meeting of the board, but only thus, and not even that was shown by the plaintiff. The guardians are agents of the city, but with limited powers. How far these powers extend we need not, however, inquire, for there was no evidence that any contract with the plaintiff was made, and certainly the law implied none. The disposition made of the reserved point was therefore entirely correct.

The judgment is affirmed.