# Blew *v.* Ryan Township, Appellant.

*Road law—Supervisors—Repair of road—Contract.*

1. A person cannot recover the cost of removing a tree which had fallen across a highway, or for the removal of snow from the same, unless he shows an express contract with the supervisors. The mere fact that one of the supervisors had told him that when he saw anything wrong with the highway in his neighborhood to repair or remedy it, and he would be paid, is not a sufficient basis for a claim against the township for compensation for the work in question.

2. The duties and powers of township supervisors in making and repairing the public highways are discretionary or quasi judicial. It is for them to decide what materials are to be used, and how and when, and where they are to be used. These powers cannot be delegated to others.

3. In an action against a township where the plaintiff is claiming compensation for removing a tree which had fallen across a highway, and has named a sum which is apparently excessive, the township may show by a witness who had experience in such work how much it would be worth to cut a section out of the fallen tree and remove it from the road.

Argued Dec. 7, 1909. Appeal, No. 53, Oct. T., 1909, by de

fendant, from judgment of C. P. Schuylkill Co., July T., 1908, No. 116, on verdict for plaintiff in case of William Blew v. Ryan Township.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Assumpsit for removing a tree and shoveling snow from a highway.   Before BECHTEL, J.

The facts are stated in the opinion of the Superior Court.

Carl Winkle, a witness for defendant, was asked this question: "Q. How long, in your judgment, would it take to make two cuts in that tree, one at the stump as it now appears, and another eight or ten feet away, the tree being a chestnut tree and having a hollow of ten or twelve inches, the tree having fallen down across the road, which you know the location; taking all those things into consideration, about how long do you think it would take to make the two cuts?"

Objection.

"Q. Let me add to it.   What would it be worth, taking it as I have described it, to make two cuts in a tree of that kind, as I have already described it, you having seen the location on the ground, seen the stump, it being a chestnut tree with a hollow, and falling across the road—how much would it be worth to make the two cuts, taking out a log seven or eight or ten feet long, and rolling it out of the way, to the side of the road?"

Objected to.   Objection sustained. [5]

Verdict and judgment for plaintiff for $14.96.   Defendant appealed.

*Errors assigned* were (4) refusal of binding instructions for defendant and (5) rulings on evidence, quoting the bill of exceptions.

*T. H. B. Lyon*, for appellant.

*George W. Ryan*, for appellee.

OPINION BY MORRISON, J., April 18, 1910:

This case was commenced before a justice of the peace and

it came into the common pleas by appeal of defendant and was tried on the transcript standing as a declaration. The plaintiff claimed $18.20 for labor performed for defendant, with interest thereon for five years and nine months, and obtained judgment before the justice for $24.50. Such a stale claim as this one, with the very loose and unsatisfactory evidence offered in its support, makes it look suspicious.

In the common pleas the plaintiff's testimony was offered to support the claim of $10.00 for the wages of four men for one day in removing a chestnut tree which had fallen across a highway in Ryan township; also the boarding of these men one day each; also $1.20 for labor performed by plaintiff's minor son for the township, and another sum of $2.00 for shoveling snow by the same son. The son was dead before this suit was commenced. The evidence shows that the plaintiff knew that the supervisors allowed only $1.20 per day for working on the road, yet he undertook to collect $2.50 per day and boarding.

The court below submitted the case to the jury and a verdict was found for $14.96 which the jury itemized as follows: $4.80 for the labor of men removing the tree from the road; also $3.00 for the men's boarding; also $3.20 for the labor of the minor son, with $3.96 interest.

The plaintiff alleged that four men were engaged a full day in cutting a green chestnut tree into logs and removing the portion of it that obstructed the highway. It is highly probable that a good axman could have cut said tree off on each side of the traveled highway and have rolled the log out of the road in not to exceed two hours. The plaintiff utterly failed to prove that he was employed by the supervisors, or either of them, to do said work. He offered some loose testimony that somebody made a report to him that one of the supervisors desired that he should remove the tree from the highway, but he signally failed to sustain that averment by sufficient evidence to carry it to the jury, and both supervisors specifically testified that they did not know the tree was in the road and gave no authority to anyone to remove it. The theory on which he was permitted to recover was that one of the supervi-

sors two or three years prior to the obstruction of the road by the tree had told him that when he saw anything wrong with the highway in that portion of the township to repair or remedy it and bring in his bill and it would be paid. His claim as to the $2.00 for shoveling snow rested on the same kind of authority. In neither instance did the supervisors employ him nor did even one supervisor designate the work he was to do and direct him to do it. As to the $1.20 for one day's work for the boy, the defendant contended that it was paid by an order drawn in favor of the plaintiff. The order was produced and offered in evidence by the defendant, and one of the township auditors testified that it was paid and canceled and the record of the trial shows that plaintiff's counsel admitted in open court that said order was paid, yet the jury allowed it in making up their verdict.

The only ground on which the plaintiff's claims for labor on the tree and for the $2.00 for shoveling snow rested, was the attempted delegation of the discretion of the supervisors to this private citizen, the plaintiff. We think the law is well settled that this gives the plaintiff no cause of action. The learned counsel for the defendant clearly states in his argument his position as follows: "The duties and powers of township supervisors in making and repairing the public highways are discretionary or quasi judicial. It is for them to decide what materials are to be used, and how, and when, and where they are to be used. These powers cannot be delegated to others:" 1 Dillon on Mun. Corporations (4th ed.); sec. 96, and note 1 on p. 155; 2 Dillon on Mun. Corporations (4th ed.), secs. 716 and 779.

In the present case there was no express contract and if not originally authorized to do the work, no liability can attach for services rendered on any ground of implied contract: 1 Dillon on Mun. Corporations (4th ed.), secs. 459, 460 and 464.

The principle that one cannot make another liable to him by voluntarily discharging a duty which belongs to the other person is recognized in Salsbury v. City of Phila. 44 Pa. 303.

In Anderson v. Hamilton Twp., 25 Pa. 75, our Supreme Court said: "The work which the defendant proposed to set off

against the claim of the township, was done without authority from the commissioners, or either of them, and could not therefore be charged against the township.

"A voluntary act, although beneficial to another, performed without request, affords no legal action for compensation. That the work was necessary to be done can make no difference. The road commissioners were proper persons to determine the necessity for the repairs, and to direct the manner in which they should be made. It will not do to permit the unauthorized expenditure of labor or money to be recovered from the township."

In the present case the plaintiff utterly failed to prove that he was employed to shovel the snow or to remove the tree from the highway. The best showing he could make was loose testimony of an attempt to vest in him discretionary power to make such repairs as in his judgment were necessary. This will not entitle him to recover.

At the trial, the defendant's fourth point (fourth assignment of error) was as follows: "Under all the evidence the verdict should be for the defendant." This point was refused and an exception granted to the defendant. The fifth assignment complains of the exclusion of the testimony of Carl Winkle, a witness for defendant. This witness was called to prove how much it would be worth to cut a section out of the fallen tree and remove it from the road. He testified that he had been cutting and hauling timber considerably for the last fifteen years. This evidence was objected to by the plaintiff's counsel and the court excluded it and sealed a bill. We are entirely unable to understand why this evidence was excluded. The plaintiff had no contract fixing any price for the work he alleged he had performed. He was seeking to collect more than $3.00 per day for four men for removing this obstruction from the highway. It was probably apparent to any woodsman that the charge was unreasonable and exorbitant. If he had a case for the jury at all, and the court seemed to think he had, the important question was how much was it worth to remove this obstruction from the highway. Surely the ruling of the court gave the plaintiff an undue advantage by

permitting his proofs to go to the jury and excluding all testimony offered for the purpose of showing the defendant's theory of how much it was worth to do the work. If the record were otherwise free from error, we would feel compelled to sustain the fifth assignment and send the case back for a new trial. But, we think, the plaintiff failed to make out a prima facie case for the jury under the rules of law as plainly laid down by the court below in answer to the defendant's first, second and third points, and also in the general charge. The court plainly instructed the jury that the plaintiff could not recover on a delegation of power, by the supervisors, to determine what should or what should not be done on the public road. In other words, the jury was instructed that the plaintiff could only recover on a contract with the township for the performance of the work. The learned judge said: "But before he can be allowed anything for any of the claims in this case it is necessary for you to be convinced by the preponderance of the testimony that he had a binding contract on the township for the performance of that work for which he seeks to recover. In other words, he could not authorize himself to do work for the township and recover himself on a contract." If there had been sufficient evidence from which the jury could have found in favor of the plaintiff, in accordance with said instruction, then no fault could be found therewith. But, in our opinion, the jury could not find for the plaintiff, under the evidence, without going in the very teeth of said instructions. We fail to find in the record evidence of a contract, nor do we find that even one supervisor directed the plaintiff to perform any of the work for which he claims, except possibly the $1.20 alleged to have been earned by his boy. But, as we have seen, that was paid for.

The learned court, in the opinion refusing a new trial, says that the jury was instructed that there could only be a recovery on a precedent contract; that the whole case was submitted to the jury on that question and that they have found that there was a precedent contract of employment, "and we fail to find anything in the evidence which would

lead us to disturb this finding." But the learned judge does not point out any evidence, and we have not found any, sufficient to support a verdict for the plaintiff in accordance with the instruction above referred to. The court having affirmed the first, second and third points of defendant, we are of opinion that the case logically and legally required the affirmance of defendant's fourth point (fourth assignment) and this would have withdrawn the case from the jury.

The fourth and fifth assignments of error are sustained and the judgment is reversed.