## IVEY *v.* THE STATE.

1. The court created by the act of August 14, 1885, "to establish the city court of Macon," etc., was, in all substantial respects, a "like" court to the city court of Atlanta as it existed on the date of the ratification of the present constitution.

2. Construing all together the provisions of that act, the court thereby created was established *in* the city of Macon.

3. It follows that the Supreme Court has jurisdiction of bills of exceptions sued out to review judgments of the city court of Macon.

4. Neither paragraph 1 of section 5, article 6 of the constitution (Civil Code, § 5851) nor any statute of this State confers upon a judge of the superior court authority to preside in a city court, save only in cases wherein the judge of that court is ˙disqualified to preside. When, therefore, a superior-court judge undertakes to preside in a case pending in a city court, which the judge thereof is qualified to try, the so-called trial is a nullity and the result of it absolutely void.

Argued October 15, Reargued November 1,— Decided November 26, 1900.

Indictment for assault and battery. Before Judge Nottingham. City court of Macon. June term, 1900.

*John R. Cooper* and *Marion W. Harris*, for plaintiff in error.
*Robert Hodges, solicitor-general,* contra.

*Washington Dessau* and *DuPont Guerry* argued for the motion to dismiss. *John I. Hall* and *James L. Anderson,* contra.

SIMMONS, C. J. This case arises upon a bill of exceptions from the city court of Macon. When the case was called, the solicitor-general moved to dismiss it, upon the ground that this court had no jurisdiction to entertain a writ of error from the city court of Macon, because, first, that court, established by the act of August 14, 1885 (Acts 1884–5, p. 470), was not a "like court" to the city court of Atlanta or that of Savannah; and, second, the act establishing the court did not locate it in the city of Macon. The motion to dismiss was reserved. After reargument of the motion by counsel interested in other cases pending here from the city court of Macon, we have come to the conclusion that the grounds of the motion to dismiss are not well taken. The motion is therefore denied.

1–3. Under the constitution of this State, writs of error lie to this court from the superior courts of the State and from "the city courts of Atlanta and Savannah and such other like courts as may be . . established in other cities." We have examined the act creating the city court of Macon, and the act creating the city court of Atlanta which was in force at the time of the adoption of the present constitution. Without the use of parallel columns and without going into details, we will simply state that we think the acts are substantially alike. There is, of course, some difference in detail, but the courts established are, in constitution, practice, and procedure, substantially the same. We think that the constitution, by the expression "like courts," does not mean courts identical in

all respects. It is sufficient if the court established be substantially like the courts of Savannah and Atlanta or either of them.

The gravest doubt is raised by the second ground of the motion to dismiss. This court has held in several cases that a city court, to come within the clause of the constitution above quoted, must be located in a city; and the question is whether the act establishing the city court of Macon, taking all of its provisions together, can be so construed as to show an intention to establish the court in the city of Macon. It was argued that the act itself requires us to construe it to the contrary, because the forty-fourth section of it provides that the county commissioners of the county shall provide a suitable place for the holding of the court. The solicitor-general argued that this shows that the court was not located in the city of Macon, and that, under it, the commissioners had power to locate the court outside the city of Macon in the county of Bibb, over the whole of which county the court had jurisdiction. We think that the act will not bear that construction. The board of commissioners of Bibb county, under the act creating the board, have control of county affairs and public buildings. It is the duty of the commissioners to provide suitable accommodations in the court-house for the public officers of the county. When this court was established, there may have been no suitable place prepared in the court-house for holding the court. It may have been that the ordinary, the superior court, the clerk, and the sheriff occupied all of the offices in the court-house which had been properly furnished, and it may have been that the superior court occupied the court-room all of the time as at that time there was sufficient litigation to keep the superior court engaged nearly all of the year. If this was true, the legislature and the draftsman of the bill must, through the representatives of Bibb county, have had knowledge of it. This section of the act may, therefore, have been placed in it in order to compel the commissioners to provide a suitable place in the court-house for the newly established court which was to be a city court. Or the clause may have been placed in the act in order that there might be no doubt as to the authority or as to the duty of the commissioners to provide a place for holding the court. It was a wise provision to insert in the act, and was not intended, in our opinion, to give the commissioners power to provide a place for holding the court outside of the court-house and of the city.

12

While the constitution of this State requires this court to declare unconstitutional all acts of the legislature which are so, the power is exercised with hesitation and reluctance. This court hesitates to declare that a co-ordinate branch of the State government has violated the constitution, except where it is its manifest duty to do so. If the language of the statute under consideration is ambiguous, or lacks precision, or uses one word when another would express the manifest intention of the legislature, the intended meaning must be sought by this court to aid it in construing the act. The court will always adopt that construction which will render the act constitutional, rather than a construction which will make it unconstitutional. It will also look at all the provisions of the act which show the intention of the legislature. Applying these rules to the act now under consideration, we think it is manifest that the legislature intended to establish a city court in the city of Macon according to the constitution. It is true the title of the act is " An act to establish the city court of Macon, in and for the county of Bibb; to define its jurisdiction and powers; to provide," etc., and the enacting clause declares that "the city court of Macon is hereby established and created with civil and criminal jurisdiction over the whole county of Bibb." It is also true the act nowhere expressly provides that the court is to be located within the city of Macon. The legislature must necessarily have known that no city court could be established unless it was located in a city, and we will strive to avoid construing the act as an attempt to violate the constitution. The fair inference, therefore, is that the preposition " of" was used as being synonymous with the preposition "in," and that the word " of" was used to indicate that the city court should be a resident of the city and located therein. These prepositions are frequently used as synonymous. When we speak of A of Macon, we mean that he is a resident of Macon and lives in Macon. When in a petition the defendant is alleged to be " of" a certain county, the allegation is sufficient to show that he is resident in that county and to determine the jurisdiction of the court over his person. Upon this subject see the reasoning of Mr. Justice Fish in the case of *Johnson* v. *Lumber Co.,* 103 *Ga.* 223.

Section 4360 of the Civil Code requires the clerk of the superior court to keep his office and all things belonging thereto at the county-site and at the court-house. The twenty-third section of the act

establishing the city court of Macon makes all laws applicable to the duties of the clerk and sheriff of the superior court apply to the clerk and sheriff of the city court.   It being the duty of the clerk of the superior court to keep his office in the court-house, it must likewise be the duty of the clerk of the city court of Macon to keep his office there.   The legislature, knowing that the clerk of the superior court was required to keep his office at the court-house, must have intended by this provision of the act to require the clerk of the city court to keep his office there also.   There is another section of the act which shows, in our opinion, that the legislature intended to establish this court in the city of Macon.   As before remarked, the legislature must have known that no constitutional court, with power to grant new trials and from whose judgment writs of error would lie, could be established in any other place than an incorporated city.   By sections 33 and 36 of the act establishing the city court of Macon it is distinctly provided that a writ of error shall lie direct from the city court to the Supreme Court, and that the judge of the city court shall have power to grant a new trial in any case, civil or criminal.   · This seems to us a strong circumstance to show that the legislature intended to establish the court in Macon.   Taking together all the different portions of the act, we are satisfied that it is susceptible of the construction that the court was intended to be located in the city of Macon, and that, therefore, the writ of error will lie.

In response to the contention that the General Assembly could not, by the act of February 21, 1876 (Acts 1876, p. 96), constitutionally extend the jurisdiction of the city court of Atlanta over the whole of Fulton county and that this act was void, or that, if this be not so, the court ceased to be a "city court" whose errors this court could correct upon a direct bill of exceptions, it is sufficient to cite the case of *Whittendale* v. *Dixon*, 70 *Ga.* 721.   But, aside from this, the matter was certainly one over which the sovereign people had full control, with power to deal with it as they saw fit. It is the plain duty of this court to carry out the will of the people as expressed in the fundamental law.   Before the constitutional convention of 1877 met or the present constitution was ratified, the legislature had undertaken to extend the jurisdiction of the city court of Atlanta.   It can not be doubted that the reference to this court in the constitution meant the court as it stood after the pas-

sage of the act of 1876. We are absolutely confident that the words "city court of Atlanta" were not designed to indicate this court as it existed before that act was passed. So, then, we have in the organic law itself the equivalent of a solemn declaration that there could be and was in Georgia a "city court" with jurisdiction over a whole county, from which a bill of exceptions to the Supreme Court would lie; and this very court was expressly made a type of one of the classes of city courts, to be established after the constitution became of force, whose errors might be directly reviewed by this court on bills of exceptions therefrom.

4. This brings us to a consideration of the merits of the case. The constitution of this State provides (art. 6, sec. 5) that "In any county within which there is, or hereafter may be, a city court, the judge of said court and of the superior court may preside in the courts of each other in cases where the judge of either court is disqualified to preside." The record of the present case discloses that the city court of Macon and the superior court of Bibb county were in session on the same day; and that the judge of the superior court was disqualified to try a certain case pending in his court, and, under the above-recited section of the constitution, called upon the judge of the city court to preside in the superior court and try the disqualified case. The judge of the city court left the bench of his court and went upon the bench of the superior court to try the case; whereupon the judge of the superior court went upon the bench of the city court and called the case of The State *v.* Ivey. The judge of the city court was not disqualified to try Ivey. The judge of the superior court presiding, Ivey was tried and convicted by a jury in the city court. The trial of the disqualified case in the superior court having been finished, the judge of the city court returned to the city court, and the judge of the superior court returned to his court. Thereupon the judge of the city court proceeded to sentence Ivey, who had, as just stated, been found guilty by the jury while the judge of the superior court was presiding in the city court. When sentence was about to be pronounced, Ivey, through his counsel, objected thereto, on the ground that the judge of the superior court had no power or authority to preside in the trial of Ivey in the city court, the judge of that court not being disqualified. The judge of the city court overruled the objection and pronounced sentence and judgment upon the verdict.

of the jury, had while the superior-court judge was presiding. To this judgment Ivey excepted and brings the case here for review. We think the exception was well taken.  We think that the clause of the constitution above quoted gave the judge of the superior court no power to preside at the trial of Ivey.  Under this clause, the judge of either the superior or city court may preside in the court of the other only in cases in which that other is disqualified. If the judge of the city court had been disqualified to try Ivey, the judge of the superior court could have presided at the trial, and the judge of the city court could at the same time have presided in the superior court in the case in which the superior-court judge was disqualified.  Neither can preside in the other's court except in a case in which the other is disqualified.  This being true, the trial of Ivey was a nullity, the verdict illegal, and there was nothing upon which the judge of the city court could predicate his judgment.　　　　*Judgment reversed.　All the Justices concurring.*