### 5318.   MAYOR & COUNCIL OF BRUNSWICK *v.* SIMS.

POTTLE, J.   A municipal charter authorized any alderman in the city to preside in the police court whenever both the mayor and the acting mayor were disqualified or, from providential cause, unable to preside. A person charged with a violation of a municipal ordinance was arraigned in the police court, which was presided over by one of the aldermen, and he was convicted, sentenced to labor on the public streets of the city, and did actually perform labor in accordance with the sentence. No objection was made by the accused to the competency of the alderman who pre-

sided, and no exception was taken to the judgment of conviction. After having served his sentence the accused brought an action in assumpsit against the city, to recover for the value of the services thus rendered, upon the theory that the alderman had no authority to preside, both the mayor and the acting mayor being present in the city at the time of the trial, and competent and qualified to act. *Held*, that the suit can not be maintained. The police court being regularly in session, and the alderman being competent to preside under certain circumstances, the accused was bound to object to his competency at the trial, and can not collaterally attack the judgment of conviction, on the ground that the alderman had no authority to render the judgment. See *Daniels* v. *Towers*, 79 *Ga.* 785 (7 S. E. 120); *McMillan* v. *Nichols*, 62 *Ga.* 36; *Beall* v. *Sinquefield*, 73 *Ga.* 48; *Tindall* v. *Nisbet*, 113 *Ga.* 1114 (39 S. E. 450, 55 L. R. A. 225); *Rogers* v. *Felker*, 77 *Ga.* 46; *Jarrell* v. *Guann*, 105 *Ga.* 139 (31 S. E. 149). The case is distinguishable from *Wells* v. *Newton*, 101 *Ga.* 141 (28 S. E. 640), and *Ivy* v. *State*, 112 *Ga.* 175 (37 S. E. 398), either by reason of the fact that the person who assumed to act as judge had no authority under any circumstances to preside over the court or because the judgment was directly attacked. Whether or not a municipal corporation can be made liable under any circumstances upon an implied promise to pay for services rendered need not be decided, but on this subject see Tiedeman on Municipal Corporations, § 164; Argenti *v.* City of San Francisco, 16 Cal. 256-284; Board of Commissioners *v.* Boyle, 9 Ind. 296; Saulbury *v.* Philadelphia, 44 Pa. 303. One can not be rendered liable upon an implied contract to pay for services, unless he accepts the services with knowledge that the law would compel him to pay for their value. In the present case the services were rendered to the city under a judgment valid on its face, and under which the plaintiff could have been required to perform the services without compensation. If the person who imposed the sentence had no authority under any circumstances to do so, it may be that the city, being chargeable with knowledge of this fact, would be bound to know that the judgment was void and that it would be liable for the value of the plaintiff's services, but since the judgment was valid on its face, and no objection was made as to the competency of the alderman, the city could not be rendered liable as upon an implied promise to pay, merely because it might thereafter be shown that the alderman had no authority to preside in the particular case by reason of the fact that the mayor of the city was present and competent to act.                    *Judgment reversed.*

DECIDED JANUARY 27, 1914.

Complaint; from city court of Brunswick—Judge Krauss. December 3, 1913.

*J. T. Colson*, for plaintiff in error. *F. H. Harris*, contra.

RUSSELL, C. J., dissenting. I agree with the proposition that there can be no implication of a promise to pay for services of which the person who receives the service has no knowledge; but I can not agree that the doctrine of an implied promise to pay the

value of services which are actually received by one who knows that they are being performed is excluded merely because these services are wrongfully obtained or obtained by duress. Decisions are numerous in which actions dependent upon duress were maintained, where articles of value, or other property, had been obtained under void process, purporting to be valid or represented to be such. The obtaining of the services, or other thing of value, by duress would of course be a tort; but I see no reason why the plaintiff.in such a case should be deprived of his right of election to waive the tort and sue upon his rights under the contract, whether that contract be express or implied. The whole question turns upon whether there can be, or whether it is impossible that there should be, an implied contract to pay for services wrongfully obtained, though with the knowledge of the beneficiary of those services.

It must be presumed that the city knew that the judgment was void, because the absence which was necessary to enable the alderman to preside was that of officers of the city itself; and it is positively stated that these officers (whose knowledge must be imputed to the city) were in fact present and duly qualified; and the city was charged with knowledge, and knew from the beginning, that the alderman who presided was not qualified to preside. The services were obtained upon a judgment which the city knew to be invalid, and which was rendered by an officer whom the city knew to be disqualified. The Georgia cases cited are not, in my judgment, in point; for they relate to the limited authority of counties under the laws of this State, as to which it is well settled that no liability can be assumed by county authorities until the contract, no matter how small in amount, has been entered upon the minutes. And this regulation as to counties, so far as it applies to the charter here involved, is not applicable to municipalities.

The implied contract which authorizes a recovery on a quantum meruit for services by one who has made no express stipulation as to the compensation, in my opinion, arises whenever the benefit of services of value is obtained with the knowledge of the person benefited, and with such knowledge is accepted by him. Certainly the fact that compulsion is used, and one is forced as a "peon" to render service, ought not to be an excuse for eliminating the only essential elements which are necessary as substitutes for an agree-

ment upon the amount of compensation, to wit: knowledge of the services and their value in a case in which knowledge of the services and their value is admitted.