BELL COUNTY v. HINES, Director General of Railroads. (No. 6196.)

(Court of Civil Appeals of Texas. Austin. Feb. 4, 1920. Rehearing Denied March 17, 1920.)

1. COUNTIES &⚮174, 190—COUNTY, AS WELL AS "DEFINED DISTRICT," MAY ISSUE ROAD BONDS.

Under Const. art. 3, § 52, as amended in 1904, providing that any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district may, upon vote of two-thirds of the taxpayers, issue road bonds, the term "defined district" means a defined area in a county, and less than a county, etc., although under the section a county, as well as a "defined district," may issue road bonds, construction of roads being a county purpose; the limitations as to amount of taxes which could be levied being removed, not only from road district, but from counties.

2. HIGHWAYS &⚮126—ROLLING STOCK AN INTANGIBLE ASSET OF RAILROAD COMPANY SUBJECT TO ASSESSMENT FOR DEFRAYING ROAD BONDS; "OF."

Where a county, pursuant to Const. art. 3, § 52, as amended in 1904, and Rev. St. 1911, art. 628, voted special road bonds, the rolling stock and intangible assets of a railroad company passing through the county may be taxed for the purpose of paying the interest and providing a sinking fund for the redemption of the bond, the property of the county subject to taxation under the statute including the county's appropriate share of the rolling stock and intangible assets of the railroad company as fixed by article 7414 et seq.; the word "of" not necessarily meaning "in," but being subject to interpretation as being used in the possessive case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Of.]

3. HIGHWAYS &⚮126—THAT ROAD DISTRICT CANNOT TAX RAILROAD ROLLING STOCK AND INTANGIBLE ASSETS DOES NOT PREVENT COUNTY FROM SO DOING.

That a defined district provided for by Const. art. 3, § 52, as amended in 1904, which issued bonds for highways could not tax the rolling stock and intangible assets of a railroad company, does not prevent a county issuing road bonds pursuant to the section, from taxing rolling stock and intangible assets of the railroad, for Rev. St. 1911, art. 7414, provides that railroad companies shall pay local taxes to the county on intangible assets, etc., and such property is part of the property of the county.

Appeal from District Court, Bell County; F. M. Spann, Judge.

Action by Bell County against Walker D. Hines, Director General of Railroads. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Lewis H. Jones and M. B. Blair, both of Belton, and C. M. Cureton and W. P. Dumas, both of Austin, for appellant.

Terry, Cavin & Mills, of Galveston, C. C. Huff and A. H. McKnight, both of Dallas, and Lee, Lomax, Wren & Smith, of Ft. Worth, for appellee.

### Findings of Fact.

JENKINS, J. An election, regular in all respects, was held in Bell county, to determine whether or not it should issue certain bonds, for the purpose of taking over the roads in certain road districts in that county, and take up and discharge the bonds theretofore issued, and to further construct and maintain additional roads in said county. The requisite number of votes was cast in favor of issuing said bonds; the result thereof was legally declared; the bonds were issued in the manner required by law; and thereafter the commissioners' court levied a tax of 55 cents on the $100 on all property subject to taxation in Bell county, to pay the interest on said bonds, and provide the sinking fund for same.

The action as above set out was in pursuance of chapter 2, title 18, of the Revised Statutes of this state, and of the act of April 5, 1917 (chapter 203; articles 637a to 637f, inclusive, 1918 Supplement to Revised Statutes), under the provisions of article 3, § 52, of the Constitution of this state.

Appellee paid said tax on its physical property situated in Bell county, but refused to pay the same on its rolling stock and intangible assets, as provided in articles 7414 to 7426, 7524, 7525, R. S.

This suit was brought by Bell county to enforce the collection of such tax. The case was submitted to the court without a jury, and the court, after hearing the pleadings and the evidence, found as a conclusion of law that:

"Under section 52, article 3 of the Constitution, and under chapter 2, title 18, of the Revised Statutes, as amended by chapter 203 of the Acts of the Thirty-Fifth Legislature, regular session, the commissioners' court of Bell county had no authority or power to levy the tax of 55 cents on the $100 on the intangible assets and rolling stock of defendant, and the part thereof apportioned to Bell county."

Judgment was accordingly rendered for the defendant, the appellee herein.

### Opinion.

The issue of fact determinative of the law of this case is whether the bonds issued by Bell county were issued in its capacity as a county, or as a special road district, the boundaries of which happen to coincide with the boundaries of the county.

The legal deduction, as we will hereinafter show, is that if the bonds were issued by Bell county as a county, and not by a special road district, known by the name of Bell

county, the rolling stock and intangible assets of appellee, as apportioned to Bell county for the purpose of taxation, are subject to taxation, for the purpose of paying the interest on the bonds so issued and providing for a sinking fund for the same; otherwise they are not.

The provision of the Constitution, art. 3, § 52, as amended in 1904, under which the bonds were issued, reads as follows:

"Under legislative provision, any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described within the state of Texas * * * upon a vote of a two-thirds majority of the resident property taxpayers voting thereon, who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds, or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of real property of such district or territory, * * * and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit:

" * * * The construction, maintenance, and operation of graveled or paved roads or turnpikes, or in aid thereof."

[1] "Defined districts," as that term is used in the Constitution, means a defined area in a county, and less than the county, other than a political subdivision of such county. In addition to "defined districts," the amendment to the Constitution above set out authorized any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state to issue bonds, upon the vote of the qualified taxpaying voters of the territory to be affected, for public road purposes, and to levy a tax upon the property of such territory to take care of such bonds.

We agree with appellee that such territory may properly be called a road-taxing district, whether the same be less than a county or more than a county, but not so as to a county. Our reason for this distinction is that the subdivisions mentioned, other than counties, were unknown as taxing units until created by statutes of comparatively recent date; but counties, as taxing units for county purposes, have existed from the foundation of this government. Counties had the right to levy taxes within the limits prescribed by the Constitution, for county purposes, prior to the amendment of the Constitution, as hereinbefore set out. Construction and maintenance of public roads within a county are county purposes. Prior to the adoption of said amendment, counties, political subdivisions, and defined road districts were limited as to the total amount of taxes which they could levy to 30 cents on the $100. This limit was removed, and road districts were permitted to be formed so as to comprise more territory than a single county. The limitation as to the amount of taxes that could be levied for road purposes was removed, not only as to road districts, but also as to counties. The constitutional amendment would have been the same, in so far as it affects counties, if it had made no reference to road districts, but had read:

"Under legislative provision, any county, upon a vote of two-thirds of the resident taxpayers voting thereon, who are qualified to vote in such territory, in addition to all other debts, may issue bonds," etc.

The fact that this provision was granted to divisions of territory other than counties did not deny the same to counties. On the contrary, by the express language of the Constitution, it is granted to counties also.

[2] The legislation under this provision authorizes an election to be held to determine whether or not a tax shall be levied upon the property of the county, subject to taxation, for the purpose of paying the interest, and providing for the sinking fund, if the bonds are issued by the county, or upon the property of the district, if issued by a district. R. S. art. 628.

The proposition submitted to the voters of Bell county was "whether or not the bonds of said county" should be issued. The bonds issued are denominated "Bell County Special Road Bonds." The special tax levied was on "all taxable property of Bell county to create a sinking fund, to pay interest, and to retire at their maturity Bell county special road bonds."

Such being the fact, did Bell county have the right to collect a tax on the rolling stock of appellee, taxable in said county for state and county purposes, for the purpose of paying the interest on these bonds and creating a sinking fund for their redemption?

In addition to the contention that under the facts stated Bell county as a matter of law was only a road district, the appellee contends that no portion of its rolling stock or intangible assets were taxable for such purpose, because the same are not included in the phrase, "property of said county"; that this phrase means property situated in said county.

That "of" sometimes means "in" is true, as in the case of Ivey v. State, 112 Ga. 175, 37 S. E. 398, in which the Supreme Court of Georgia held that the act to establish "the city court of Macon" meant to establish such court in the city of Macon. Also in Sisson v. Supervisors, 128 Iowa, 442, 104 N. W. 454, 70 L. R. A. 440, it was held by the Supreme Court of Iowa that an act to drain the lands "of the state" meant lands in the state.

If it was necessary to hold that Bell county could not tax any property, except that situated in such county, it would not be do-

ing greater violence to the fact than is frequently done in legal fictions, to hold that the pro rata of appellee's intangible assets and rolling stock, assigned to that county for taxation under the provisions of the statute on that subject, is, for the purposes of taxation, situated in said county. Intangible values are properties subject to taxation somewhere. Its situs cannot be determined by the ordinary tests of sight and touch. It grows out of, and in a sense adheres to, physical property. The law which apportions it for the purpose of state and county taxation to the counties through which railroads run, on the basis of mileage of track in such counties, may be regarded as a legislative declaration of the situs of same for such purpose. As to the rolling stock, the Constitution provides that it shall be subject to taxation in the several counties through which the railroad runs. Article 8, § 8.

But "of" does not always mean "in." It is frequently used to indicate the possessive case. "Property of a county subject to taxation," of course, does not mean that title to same is in the county, in the ordinary sense of ownership, but it does mean ownership in the sense of being a part of the taxable assets of the county. Whatever is a part of the taxable assets of a county is the property of such county, within the meaning of the statute here under consideration.

[3] Appellant admits, and properly so, that the intangible assets and rolling stock of a railway company are not subject to taxation by a special road district. Appellee asserts that it is absurd to contend that a county can levy such tax, for the purpose of raising money to pay the interest on road bonds and provide a sinking fund for same, when it is admitted that a road district, whose powers of taxation are given by the same words in the same law, cannot do so. It is true that power of taxation by counties and by districts for road purposes is defined in the same clause, and in the same words, namely, "the property of the county, or of the district subject to taxation." But this statute does not undertake to define what is the "property of a county," or what is "the property of a district" for the purpose of taxation. To determine this we must look elsewhere. Article 7414, Revised Statutes, provides that each railway company "shall pay an annual tax to the state * * * on their intangible assets, * * * and local taxes thereon to the counties in which its business is carried on." Other provisions of the statute provide for apportioning intangible assets to the counties, and how the same shall be listed on the tax rolls of the county. In this wise, the statute makes the pro rata of intangible assets allotted to a county taxable assets of such county, or, in other words, the property of such county for the purpose of taxation. The statute does not so provide with reference to road districts, nor as to any other district. Hence such intangible assets are the property of the county for the purposes of taxation, but are not the property of a road or other district for any purpose.

We do not think that the case of State v. Railway Co., 209 S. W. 820, is an authority as to the issue involved in this case. That was a suit to collect taxes for the use and benefit of the Harris county ship channel navigation district, on the intangible assets and rolling stock of the railway company which had been apportioned to Harris county. The boundaries of the navigation district were the same as the boundaries of Harris county, but it was not Harris county. On the contrary, it was a body corporate, a separate legal entity, capable of suing and being sued as such. In that case the court held that, while the Legislature might have authorized the district to levy a tax on the intangible assets and rolling stock of the railway company, it had not done so, for the reason that it had authorized the tax to be levied upon property "within said district"; and, while recognizing the power of the Legislature to fix the situs for taxation of all personal property, as it had not fixed the situs of rolling stock and intangible values for taxation for district purposes in any district, the navigation company had no power to tax such property. Reference is here made to the case above referred to, and the authorities there cited, for a full discussion of the question of taxing intangible assets and rolling stock.

For the reason that we have concluded as a matter of law that the road bonds issued by Bell county were county bonds, issued for a county purpose, that the tax levied by the commissioners' court is a county tax, and that the intangible assets and rolling stock of appellee apportioned to Bell county for state and county taxation are the property of such county for the purpose of taxation, the judgment of the trial court is here reversed, and judgment is here rendered for appellant.

Reversed and rendered.