# San Antonio & Aransas Pass Railway Company
## v. The State of Texas.

No. 6521.   Decided June 24, 1936.
Rehearing overruled July 22, 1936.
(95 S. W., 2d Series, 680.)

*Baker, Botts, Andrews & Wharton,* of Houston, *Cunningham, Moursund, Johnson, Rogers & Slatton,* of San Antonio, for appellant.

On the unconstitutionality of the act creating the road district.   Brown v. Fidelity Inv. Co., 280 S. W., 567; City of Beaumont v. Fall, 291 S. W., 202; Altgelt v. Gutzeit, 109 Texas, 123, 201 S. W., 400; Yet v. Cook, 115 Texas, 205, 281 S. W., 837.

*K. K. Woodley,* of Sabinal, and *W. P. Dumas,* of Dallas, for appellee.

Cites the cases used in the opinion.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

The Honorable Court of Civil Appeals, Tenth District, certifies the following statement and questions:

"In the above entitled and numbered cause certain questions of law necessary to its decision arise upon the record submitted to us, which we deem advisable to certify to your Honors for decision.

"The suit is one by the State of Texas against appellant for taxes, in which all taxes were disposed of in the judgment in a

manner as to which no complaint is made, except those claimed by appellee to be due a certain road district known as 'Kendall County Road District No. 5', and which road district was created by a special act of the Legislature; the special act in question being Chapter 57, of the Special Laws passed by the Forty-Second Legislature at its regular session in 1931, and reads as follows:

'AN ACT

'To create road District No. 5, Kendall County, Texas, defining and specifically setting out its boundaries, including therein all the territory embraced in commissioners precincts Numbers 1 and 4, which precincts are known as road district Numbers 1 and 3 respectively; authorizing the commissioners' court to continue to levy an ad valorem tax for the payment of the principal and interest on all outstanding bonds of the former districts embraced within road district No. 5 herein created; authorizing the issuance of bonds by the newly created road district in the manner and at such times as provided by the general laws of Texas for the issuance of bonds by road districts, and in conformity with Art. 3, Sec. 52, of the State Constitution; and declaring an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

Section 1. That road district No. 5 of Kendall County, Texas, be and the same is hereby created so as to include within its boundaries the territory now embraced in commissioners precinct No. 1, and commissioners precinct No. 4 of Kendall County, Texas, being the same territory embraced within road district No. 1 and road district No. 3 of said Kendall County, Texas, said territory being described by metes and bounds as follows: (Here follows boundaries and field notes).

Section 2. The Commissioners Court of Kendall County, Texas, is hereby authorized and required to annually levy a sufficient ad valorem tax upon the territory formerly embraced in Road District No. 1 of said County with which to pay the interest and the principal thereof as it matures on the following outstanding bonds against said former Road District No. 1; Bonds numbered 1, 9, 10, 11, 12, 13, 16, 20, 21, 22, 23, 24, and 25, in the denomination of One Thousand Dollars ($1,000.00) each, bearing interest at the rate of five per cent (5%) per annum, aggregating Thirteen Thousand Dollars ($13,000.00)—being a part of the issue of Road District No. 1 Bonds dated February 10, 1915, said issue of bonds being numbered 1 to 25, inclusive, aggregating Twenty-five Thousand Dol-

lars ($25,000.00), payable forty years from their date, redeemable at any time after twenty years from date; Bonds numbered 23 to 50, inclusive, aggregating Twenty-eight Thousand Dollars ($28,000.00), in the denomination of One Thousand Dollars ($1,000.00) each, bearing interest at the rate of five and one-half per cent (5½) per annum, payable semi-annually thirty years from date, redeemable at the option of the District —being a part of the issue of said Road District No. 1, dated May 1, 1919, said issue of bonds being numbered from 1 to 50, inclusive, in the denomination of One Thousand Dollars ($1,000.00) each, aggregating Fifty Thousand Dollars ($50,-000.00). The Commissioners Court of Kendall County, Texas, is further hereby authorized and required to annually levy a sufficient ad valorem tax upon the territory formerly embraced in Road District No. 3 of said County with which to pay the interest and the principal thereof as it matures on the following bonds now outstanding against said former Road District No. 3; Bonds numbered 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 64, 65, 66, 67, 71, 74, 75, and 79, in the denomination of One Thousand Dollars ($1,000.00) each, bearing interest at the rate of five per cent (5%) per annum, interest payable semi-annulally, aggregating Thirty-five Thousand Dollars ($35,-000.00)—being a part of the issue of Road District No. 3 bonds dated June 15, 1917, numbered consecutively from 1 to 80, inclusive, in the denomination of One Thousond Dollars ($1,000.00) each, aggregating Eighty Thousand Dollars ($80,-000.00), payable at the pleasure of the District at any time after twenty years from their date. Said tax shall be assessed and collected in the same manner in which it is now assessed and collected and applied by the Commissioners Court to the purposes for which it was levied.

Section 3. The Commissioners Court of Kendall County, Texas, is hereby authorized and empowered to proceed in the issuance of bonds by road district No. 5, herein created, just as is provided by general law for the issuance of road district bonds in ordinary road districts, and just as though there were no former road districts covering the same territory embraced within the bounds of road district No. 5 herein created, save and except the indebtedness for the purposes mentioned in Section 52, Article 3 of the State Constitution, shall never exceed 25% of the real estate values in any part of said district, and it shall not be necessary for road district No. 5 herein created to vote and issue bonds to compensate the two road districts

embraced within the territory of road district No. 5, but said indebtedness shall be and remain an indebtedness against the territory embraced in former road districts Nos. 1 and 3, respectively.

·Section 4. Proof of publication of the constitutional notice required in the enactment of local and special laws has been made in the manner and form provided by law.

Section 5. The fact that the territory embraced in road district No. 5 herein created, is in urgent need of new roads; and the public importance of the purposes herein contemplated creates an emergency and an imperative public necessity requiring the suspension of the constitutional rule requiring bills to be read on three several days in each House and said rule is hereby suspended, and this act shall take effect and be in force from and after its passage and it is so enacted.'

"The appellant defended against the road district tax on various grounds involving the constitutionality of the Special Act creating the road district. Judgment was rendered in favor of the State for the taxes so claimed, plus penalty and interest, and for foreclosure of the alleged tax lien upon the 25.84 miles of railroad right-of-way, against which such taxes were levied by the Commissioners' Court.

"The questions relating to the constitutionality of said act were raised by the answers of the appellant in the trial court, and are raised by Assignments of Error and Propositions contained in its brief filed in this court.

"The taxes claimed by appellee to be due and owing to it by appellant, for the use and benefit of said Kendall County Road District No. 5, were levied for the purpose of paying the principal of, and the interest on a certain series of coupon bonds, aggregating in amount the principal sum of One Hundred Eighty-five Thousand Dollars ($185,000.00), issued on the faith and credit of said Kendall County Road District No. 5, and all of which bonds have been approved by the Attorney General.

"It will be noticed that the special act in question differs from the general law authorizing the creation of road districts, which general law is Chapter 16 of the Acts of the 39th Legislature, First Called Session, in that such special act provides that it shall not be necessary for the district thereby undertaken to be created to vote and issue bonds to compensate the two road districts attempted to be embraced within its boundaries, and that the bonded indebtedness of each of said two road districts shall be and remain an indebtedness against the terri-

tory embraced in road districts 1 and 3, respectively, whereas said general law provides for the voting and issuance of bonds to compensate districts embraced within a new district.

"It will also be noticed that the caption of the act, so far as it deals with the question of issuing bonds, stipulates that the act authorizes the issuance of bonds by the newly created district, in the manner and at such times as provided by the general laws of Texas for the issuance of bonds by road districts, whereas the act itself stipulates that compensation bonds need not be voted as provided by the general law, to compensate the two road districts embraced within the territory of the district sought to be created.

"The appellant contends that the bonds and the taxes sought to be collected on its properties in payment thereof, are invalid because—

"1. That the special act in question is invalid in that it violates that portion of Section 56 of Article 3 of the State Constitution, which prohibits the passage of special or local laws in all cases where a general law can be made applicable, it being contended in this connection that the above mentioned general law then in existence provided for the creation of road districts for the purpose sought to be carried out by said special act and for the issuance of bonds by such districts, and that the terms and provisions of said special act conflict with the terms and provisions of such general law, in that said special act stipulates that it shall not be necessary for the district thereby attempted to be created to vote and issue bonds to compensate the two road districts undertaken to be embraced within its boundaries, and that the bonded indebtedness of each of said two road districts shall be and remain an indebtedness against the territory embraced therein respectively, whereas appellant contends that said general law provides for the voting and issuance of bonds to compensate districts embraced within a new district.

"2. That said special act also violates that part of Section 56 of Article 3 of the Constitution, which prohibits a local or special law authorizing the laying out, opening, altering or maintaining of roads and highways in that it undertakes to create a road district, and that it is disclosed upon its face and by the undisputed evidence that the sole purpose of its passage was that of construction and maintenance of roads.

"3. That the special act in invalid and in violation of Section 52 of Article 3 of the Constitution on the ground that it undertakes to provide for and leave in effect two road districts

covering the same land and created for the same purpose, as shown by said special act and the assessment proceedings.

"4. That as the bonds outstanding against the two road districts are unequal, and a different rate of taxes is required in the two districts for payment of interest and the retirement of the bonds, and the new district which is undertaken to be created out of the two districts is authorized to also issue bonds and levy taxes to pay the same and the interest thereon, and such bonds are authorized for the identical purpose for which the bonds were issued and tax levied in Districts Nos. 1 and 3, such special act authorized and provides for taxation which is not equal and not uniform, and therefore violates Section 1, Article 8, of the State Constitution.

"5. That there is a conflict between the caption and the act, further, that the caption is misleading and deceptive, and does not show the real purpose of the act, in that it indicates legislation authorizing the issuance of bonds in accordance with the general law, whereas the cardinal purpose of the act was that authorizing the issuance of bonds in a manner materially different from that provided in the general law.

"6. That at the time Road District No. 1 provided for the issuance of bonds in 1919, there was in existence a statute passed in 1917 and amended in 1918, being Article 768, Revised Statutes of 1925, which prohibited the creation of any district which might overlap the territory of another district or embrace any part thereof while any of its bonds were outstanding and unpaid; and that when the tax payers voted such bond issue they thereby accepted the statute and the proposal therein contained, and that thereby there was created a vested right in them and a valid contract to protect them against the creation of another district embracing their lands until such bonds were paid off; and, that the Legislature, in passing the special act in question, thereby undertook to destroy or impair the contract so created and thereby violated Article 1 of Section 10 of the Federal Constitution, and Article 1, Section 16, of the State Constitution.

"The appellee, in respect to the contentions of appellant, maintains—

"1. That by the 1904 amendment to Section 52, Article 3, of the Constitution, the Legislature is authorized, by general or special laws, to create road districts, and to provide for the assessment and collection of the taxes therein; and that the Legislature is therefore authorized to enact a special law, creating a road district, embracing within its limits two bonded

road districts previously created by special act of the Legislature, without requiring the subsequently created district to take over or assume the bond debts of such included districts.

"2. That the Legislature is authorized by amended Section 52, Article 3, of the Constitution, to authorize a road district, embracing one or more previously created bonded road districts, to vote and issue road bonds, without assuming such existing bond debts, where the amounts of the respective bond debts (created by the larger as well as the included districts) are within the debt limitations prescribed by the Constitution.

"3. That the manner in which road districts shall be created is left entirely to the Legislature; and the Legislature can exercise the same authority over a road district through a special law as through a general law.

"4. That the title or caption of said special act was sufficiently full to give reasonable notice of the contents of the bill, and put all interested parties on notice that it was a bill to create a road district embracing within its boundaries existing road districts Nos. 1 and 3; further, that it can be ascertained therefrom that the Kendall County Commissioners' Court would 'continue to levy' taxes to pay the bonds of the existing road districts; and, further, that it can be ascertained therefrom that the newly created road district No. 5 is authorized and empowered to issue bonds 'as provided by the general laws of Texas for the issuance of bonds by road districts, and in conformity with Art. 3, Sec. 52 of the Constitution * * *.'

"The appellant's right of way undertaken to be taxed by road district No. 5 is situated partly within road district No. 1 and partly within road district No. 3.

"The Commissioners' Court, by its order, levied taxes for the year 1931, as follows: Road District No. 1, first issue, 2¢; Road District No. 1, second issue, 20¢; Road District No. 3, 15¢; Road District No. 5, 50¢. It was agreed that the assessment rolls for the year 1930 showed the assessed valuation of property in Road District No. 1 for the purpose of taxation, as follows: real property—$1,067,784.00, personal property—$379,078.00; and in Road District No. 3, as follows: real property—$1,352,130.00, personal property, $480,024.00; and on the rolls for 1931, the valuation in Road District No. 1, both real and personal, was $1,420,504.00, and in Road District No. 3, both real and personal, was $1,777,293.00.

"The questions we desire to certify are as follows:

"*Question 1:* Is the special act in question invalid on the ground that it violates that portion of Section 56 of Article 3

of the State Constitution, which prohibits the passage of special or local laws in all cases where a general law can be made applicable?

"*Question 2.* Is the special act in question invalid on the ground that it violates that portion of Section 56 of Article 3, which prohibits the passage of local or special laws authorizing the laying out, opening, altering or maintaining of roads and highways?

"*Question 3:* Is the special act in question invalid and in violation of Section 52, Article 3 of the Constitution, on the ground that it undertakes to provide for two taxing districts created for identical purposes, one of which is intended to embrace within its boundaries all, or practically all, of the territory embraced in the other district?

"*Question 4:* Is the special act in question (and the road district created or attempted to be created thereunder) invalid under the provisions of Section 1, Article 8, of the State Constitution which requires that taxation shall be equal and uniform, on the ground that the act authorizes and provides for a different rate of tax levy upon different lands included within said district for the purpose of paying off and discharging the road bonds of the two old districts and those authorized to be issued by the new district?

"*Question 5:* Is the special act in question invalid on the ground that the caption conflicts with the act or is so deceptive and misleading as to the purpose of the act that it violates Section 35 of Article 3 of the State Constitution?

"*Question 6:* Is the special act in question invalid on the ground that the Legislature thereby undertook to impair the obligation of a contract in violation of Article 1, Section 10, of the Federal Constitution, and Article 1, Section 15, of the State Constitution, by undertaking to create a road district embracing the territory which was included in a road district which had bonds outstanding, voted and issued during the existence of statutory provisions which prohibited the creation of any district which might embrace any part of another district while any of its bonds were outstanding and unpaid?

"*Question 7:* Is the special act invalid on the ground that it authorized the new district to issue bonds for the construction of roads therein without at the same time issuing bonds to compensate the old districts included within its bounds for the bonds theretofore issued therein and then outstanding and unpaid as was provided by the general law in force at that time?"

**OPINION.**

*First:*—Sec. 56, Art. 3 of the Constitution provides:—"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law * * * authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys * * *; and in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided that nothing herein contained shall be construed to prohibit the Legislature from passing special laws for the preservation of the game and fish of this State in certain localities."

Sec. 9, Art. 8 of the Constitution provides "* * *, and the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

Sec. 52, Art. 3 of the Constitution after denying authority to any county, city, town or other political corporation or subdivision of the State to lend its credit or grant public money or thing of value to any individual, association or corporation, provides "however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State, or any defined district now or hereafter to be described and defined, and which may or may not include towns, villages or municipal corporations may under certain limitations issue bonds to not exceeding one-fourth of its assessed valuation, the total bonded debt of any city or town not to exceed the limits imposed by other provisions of the Constitution, * * * for the construction, maintenance and operation of macadamized, gravelled, or paved roads and turnpikes or in aid thereof."

■ These provisions and their relation to and effect on each other were considered in Henderson County v. Allred, Att'y. Gen., 120 Texas, 483, 40 S. W. (2d) 17, and the conclusion reached that because of Sec. 9, Art. 8, local or special road laws are expressly exempted from the operation of the provisions of Sec. 56, Art. 3, and the power of the Legislature to enact such local or special laws without the required notice is therefore placed beyond cavil.

2 ■ In construing apparently conflicting constitutional provisions, a general provision must yield to a special provision. City of San Antonio v. Toepperwein, 104 Texas, 43, 133 S. W., 416.

■ Road District No. 1 of Kendall County and Road District No. 3 of the same county, as theretofore existing, and all orders made by the Commissioners' Court of said county in respect to the organization of said districts, the issuance and sale of their road bonds, and all other proceedings in reference thereto, were validated by the Legislature (39th Leg. 1926, First Called Session, Chapters 377 and 378) by acts approved and effective October 18, 1926. Such validating acts were upheld in Twing v. Rhodes, 118 Texas, 410, 16 S. W. (2d) 258, on the theory that since the Legislature was authorized to create and define the districts in the first instance under Art. 3, Sec. 52 of the Constitution, its ratification gave said districts from inception, legal status as bodies corporate and all bonds and tax levies which met the requirements of the preexisting statutes became valid, citing Anderson County Road District No. 8 v. Pollard, Att'y. Gen., 116 Texas, 547, 296 S. W., 1062, where the subject is carefully reviewed and thoroughly discussed by Chief Justice Cureton.

We think the same reasoning applies to the act creating Road District No. 5, Kendall County, and therefore answer Questions 1 and 2, that the special act in question is not invalid as in violation of Sec. 56 of Art. 3 of the Constitution.

■ *Second:*—There is no constitutional prohibition against overlapping improvement districts, nor is there any provision of Sec. 52, Art. 3, of the Constitution from which such prohibition may be fairly implied.

Districts Nos. 1 and 3 being validly existent and having issued bonds based upon their then respective territories, no subsequent legislation could impair the validity of such bonds. No such attempt was made in the creation of District No. 5— to the contrary, Sec. 2 of the act creating District No. 5 expressly authorizes and requires the Commissioners Court to annually levy and collect a sufficient ad valorem tax in each district to meet interest and principal on such respective bonded debts, which remained an indebtedness against the territory embraced in former districts Nos. 1 and 3, respectively.

■ District No. 5 in issuing its bonds would have to take into consideration, as to property within District No. 1, the previous indebtedness of said District No. 1, so that the total should never exceed 25% of the real estate values therein, and likewise as to District No. 3, with the result, that in estimating the extent to which (consolidated or new) District No. 5 might issue bonds for itself exclusively, in excess of its component

parts theretofore existing, the indebtedness of District No. 1 plus that of District No. 3 must be subtracted from the amount otherwise permitted to District No. 5, in order that the taxation for the latter would be equal and uniform, but the total of the indebtedness of District No. 1 and of District No. 3 and the new bonds of District No. 5, must be within the limitation of 25% of the real estate values of said District No. 5 as prescribed by Sec. 52, Art. 3 of the Constitution.

Chap. 16, Gen. Laws, 1926, 39th Leg., 1st Called Session, authorizes any county or any political subdivision or any road district theretofore or thereafter created by general or special law to issue bonds for road purposes or in aid thereof, in an amount not to exceed one-fourth of the assessed valuation of the real property of such county, political subdivision or road district and to levy and collect ad valorem taxes to pay the interest on such bonds and provide a sinking fund for the redemption thereof, in the manner therein provided, and as contemplated and authorized by Sec. 52, Art. 3, of the Constitution. When such bonds are issued for and on the credit of a political subdivision or road district, such taxes shall be assessed and collected in the same manner as are common school district taxes. Sec. 28 (in connection with Secs. 25 to 27) of said act provides that where any road district created under the provisions of said act includes one previously created and having road bonds outstanding, such included district shall be fully and fairly compensated by the new district in this manner:—An even exchange made with the holders of the outstanding bonds, and if this cannot be done, then an equal amount of the new bonds marked "non-negotiable" shall be deposited with the County Treasurer for the credit of the interest and sinking fund as a guarantee for the payment of such outstanding bonds that have not been exchanged, after which no levy shall be made under the original bond issue, but in lieu thereof, from the taxes collected on the new bond issue shall be passed to the credit of such included district the necessary sums (interest and sinking fund as so collected) to be used to pay in full the outstanding bonds thereof. Sec. 27 of the act requires all such new bonds to be issued in similar denominations, bearing the same rate of interest, having the same dates of maturity, the intent being that they shall be bonds of the new district instead of bonds of the included districts and be dated after the date of the election at which they were authorized.

Sec. 29 of the act permits any county operating under the

provisions of any special road tax law to take advantage of its provisions, and Sec. 31 is as follows: "Nothing in this Act shall be construed as invalidating any bond elections previously ordered or held within and for any county in this State or any political subdivision or defined district of any county under the provisions of Chapter 2, Title 18, Revised Statutes of 1911, and amendments thereto, or Chapter 3, Title 22, Revised Statutes, 1925, or under authority of any special county road law."

In passing, we may notice that Chap. 17, Gen. Laws, 1926, 39th Leg., 1st Called Session, validates road districts theretofore existing and legalizes their bond issues.

It would thus seem that the Act. (Chap. 16) recognizes the effect of special road tax laws and evidences the intent to make their being bound thereby, conditional upon their own acts. In other words, a special road tax law, county or district, may take advantage of the provisions of such general law, but if not so taken advantage of, of course the special law creating the district, controls.

■ The rule is well recognized that, in ascertaining the intention of the Legislature, which must always govern in the construction of statutes, where seeming or real repugnant provisions appear, the specific statute more clearly evidences the intention of the Legislature than the general one and therefore it will control. Townsend v. Terrell, 118 Texas, 463, 16 S. W. (2d) 1063; Fortinberry v. State (Com. App.), 283 S. W., 146. In Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221, the court held that a local road law being in force in Dallas County, the provisions of the general law were inoperative in that county and certain condemnation proceedings had under the general law were without authority and void, because the corresponding provisions of the local law were radically different therefrom and the local law must govern. To the same effect, see the text and supporting authorities, 39 Texas Jur., p. 150, Sec. 82.

We therefore answer "No" to Questions 3 and 7.

*Third:*—Question No. 4 is predicated upon the contention by appellant that the special act in question (and the road district created thereunder) is invalid under the provisions of Sec. 1, Art. 6 of the Constitution which requires that taxation shall be equal and uniform, on the ground that the act authorizes a different rate of tax levy upon different lands within the district for the purpose of paying off and discharging the road bonds of the two old districts and those authorized to be issued by the new district.

Appellant frankly says in its brief filed in this Court (p. 24, line 18), "no case has been found by us which is in point." It then says "the author of the bill recognizes the constitutional limitation as to the amount of the tax but ignores the fact that such bill creates an inequality in the tax upon the properties in the territory situated within the limits of the two old districts. The appellant's property was situated partly in one district and partly in the other, and is therefore in a position to complain of this inequality."

As we have demonstrated above, there is no inequality. As to District No. 5, the bonds issued by it, if within the constitutional limitation as to amount, are a charge on the property within it, and the tax rate to meet the interest thereon and sinking funds therefor, necessarily equal and uniform. No complaint is made as to this. But, when those bonds were issued and before the creation of the district there were certain charges against the property within a part of the combined or consolidated district, viz:—District No. 1. The tax to provide for these bonds is a different one than the other. No complaint is made that such tax is not equal and uniform as to that district, and so with District No. 3. The tax to provide for its anteriorly issued bonds is a different one than either of the others and no complaint is made that the same is not equal and uniform as to that district.

■ So long as the tax for the payment of the bonds is uniformly levied on all taxable property in the district which issues the bonds and which bonds are to be paid by such tax, the constitutional requirement of equality and uniformity is observed. Houston v. Gonzales Ind. S. D., Com. App., 229 S. W., 467; Davis v. Payne, 179 S. W., 60; Norris v. City of Waco, 57 Texas, 635; Hill v. Smithville Ind. S. D., Com. App., 251 S. W., 209; Kettle v. City of Dallas, 80 S. W., 874, at p. 877.

We answer "No" to Question 4.

■ *Fourth:*—That no bill (except appropriation bills) shall contain more than one subject which shall be expressed in the title is the plain command of Sec. 35, Art. 3 of the Constitution. But the title is not required to be as full as the act itself or set forth the details by which the object of the enactment is to be attained. 39 Texas Jur., p. 96, Sec. 45. The generality of the title is no objection to it so long as it is not made a cover to legislation which by no fair intendment can be considered as having a necessary or proper connection. Joy v. City of

Terrell, 138 S. W., 215; City of Aransas Pass v. Keeling, Att'y. Gen., 112 Texas, 339, 247 S. W., 818.

"It would be burdensome if not intolerable to require that the title should be as full as the act itself. The word 'title' implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise, and fraud in legislation may be prevented." Doeppenschmidt v. I. & G. N. R. R. Co., 100 Texas, 532, 101 S. W., 1080.

■ The title gave notice that it was a bill to create a road district No. 5, embracing within its limits existing road districts Nos. 1 and 3 and authorizing the commissioners court to continue to levy an ad valorem tax on all outstanding bonds of the former districts embraced within the new district, and the new district might issue bonds in the manner and as provided by the general laws of Texas for the issuance of bonds by road districts.

The body of the act creates road district No. 5 including within its boundaries (with field notes set forth) the then existing districts Nos. 1 and 3; the commissioners court is directed to annually levy a sufficient ad valorem tax upon the property formerly embraced in district No. 1 to meet interest and sinking fund requirements on the then outstanding bonds of district No. 1, also to levy a sufficient ad valorem tax upon the property formerly embraced in district No. 3 to meet interest and sinking fund requirements on the then outstanding bonds of that district.

Thus, no replacement bonds need be issued by district No. 5 in lieu of the old bonds of districts Nos. 1 and 3; they were provided for by a continuation of the levies previously required. As to district No. 5, it was authorized to issue bonds, separate from those of the component subdivisions, in accordance with the general law, provided the indebtedness (which of course includes that previously existing on such component parts) shall never exceed 25% of the real estate values in any part of the district, and provided further that district No. 5 need not issue new or replacement bonds to substitute for the indebtedness against Districts Nos. 1 and 3 which continued against said districts, respectively.

We think the special act in question is not invalid on the ground that the caption conflicts with the act or is so deceptive and misleading as to its purpose, and therefore answer "No" to Question 5.

*Fifth:*—Appellant seems to contend that because when the

bonds of Districts Nos. 1 and 3 were originally issued—it being remembered that such districts were originally created by the commissioners court and not by legislative act—Art. 768, Rev. Stat. 1925, prohibited the overlapping of road districts unless the outstanding bonds of an overlapped district be compensated by the new district, as provided in Arts. 753 to 767, covering county road bonds, a vested right existed in the taxpayers of such district in the nature of a contract to protect them against the creation of another district until such bonds are paid off. But it was also provided in Art. 775E that nothing in the act contained should impair the outstanding obligations of any district affected.

This method of issuing and handling road district obligations was banned in the Archer County Case (Browning v. Hooper, 269 U. S., 396, 46 Sup. Ct., 141, 70 L. Ed., 330) and the Legislature repealed Arts. 726 to 778, Rev. Stat., 1925. As above stated, the Districts Nos. 1 and 3 were then recreated and validated by special acts of the Legislature and of course these acts alone should now be considered in connection with appellant's contention, and we may pretermit any discussion of what was the situation, before.

If the proceedings had before, were void under the holding in the Archer County case, of course there could be no enforceable contract between the commissioners court and the property owners.

But, conceding the legality of the bonds, because of the legislative validating acts, there can be no inhibition against the right of the Legislature to change the law at any time, provided only that the security in support of the bonds is not impaired to an extent sufficient to jeopardize the investment represented thereby.

■ Debt making power is conferred upon public corporations for the promotion of the objects of their creation, and the Legislature may increase debt limits (if not in contravention of the Constitution) although heavier burdens may be inflicted on the taxpayers. Constitution, Art. 8 Sec. 9, Art. 11 Sec. 4 (as amended in 1920), Art. 3 Sec. 52, Art. 16 Sec. 59; Walker v. Meyers, 114 Texas, 225, 266 S. W., 499; Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 216, 191 S. W., 553; Dallas County Levee District No. 2 v. Looney, 109 Texas, 326, 207 S. W., 310; Fleming-Stitzer Road Building Co. v. Chastain, 241 S. W., 619; Bodenheim v. Lightfoot, 103 Texas, 639, 132 S. W., 468; Bell County v. Hines, 219 S. W., 556; Krietmeyer v.

Hemphill, 19 Fed. (2d) 513; McNear v. Little Red River Levee District No. 2, 293 Fed., 717.

The debt limitation of twenty-five per cent prescribed by Section 52, Article 3, of the Constitution, is not applicable alone to road improvements. The subdivisions therein named are authorized to issue bonds and levy taxes "as the Legislature may authorize, and in such manner as it may authorize the same," for the following public improvements, to wit: Irrigation; navigation; levees; drainage; and roads. So, the twenty-five per cent limit applies to all the five purposes hereinabove given. (See Simmons v. Lightfoot, 146 S. W., 871; Munson v. Looney, 172 S. W., 1102). The Legislature has from time to time enacted laws providing for all these improvements. (See title 128 Revised Statutes 1925, on the subject of irrigation or water improvement districts, navigation districts, levee districts, and drainage districts; and Chapter 16, Gen. Laws, Acts 1926, 1st Called Session, relating to County road bonds and road district bonds).

The last two mentioned cases announce the doctrine that a political subdivision or a defined road district, formed under authority of the statute, may embrace a part, or the whole of any irrigation district, levee district, drainage district or navigation district, provided, however, that the aggregate amount of indebtedness incurred for one or more of such purposes, in any territory common to one or more such districts, cannot exceed twenty-five per cent of the total assessed valuation of the real property values in such territory.

In other words, a road district, formed after the organization of a drainage district, may embrace a part or all of the drainage district, and constitute an entity independent of the drainage district with power to issue bonds, but the aggregate amount of indebtedness created for drainage purposes and road purposes, in the territory common to both the drainage district and the road district, cannot exceed one-fourth of the total assessed valuation of the real estate therein.

The local law in question expressly provides that no territory within the limits of appellee district shall be burdened with a debt in excess of the limitation prescribed by Section 52, of Article 3, and for the purposes authorized by that section.

We answer "No" to Question 6.

Opinion adopted by the Supreme Court June 24, 1936.

Rehearing overruled July 22, 1936.