

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 7, 1961

Honorable Jerry Sadler          Opinion No. WW-1010
Commissioner
General Land Office             Re:  Problems relating to the
Austin, Texas                        sale of lands acquired by
                                     the Veterans' Land Board
                                     at a foreclosure sale.

Dear Mr. Sadler:

By judgment entered in 1956, a "block sale" by the Veterans' Land Board to 28 veterans was set aside; the deed or deeds conveying the block of land to the State were also set aside; and the State was awarded recovery of a substantial sum. As a part of the judgment, it was provided that the judgment debt was discharged upon the payment of a portion of the judgment and the execution of a note by the defendants for the balance, secured by a deed of trust on the land. The note was executed and is now delinquent.

You request our opinion on the following questions:

1.  If the State acquires the land through foreclosure of the lien aforesaid, does such land become part of the Veterans' Land Fund?

2.  Must the Board re-sell the land so acquired under the terms set out in Article 5421m, V.C.S.?

3.  Does anything in the above procedure conflict with Article 5416, R.S.?

In addition to the above, your request contains two other questions which are conditioned upon a negative answer to question No. 1, and because we are answering such question in the affirmative, we do not answer such other questions.

Article 3, Section 49-b of the Texas Constitution authorizes the Veterans' Land Board to issue up to two million dollars in State bonds "for the purpose of creating a fund to be known as the Veterans' Land Fund", to be used for the purchase of land for veterans, and further provides that "all lands thus purchased . . . shall be a part of the Veterans' Land Fund".

You have furnished us with the form of resolution customarily used by the Veterans' Land Board in connection with the issuance of State bonds as above authorized.  Such resolution provides that each bond shall contain the following language:

"Payments of the principal of and interest on this bond and the series of which it is one, shall be made primarily from the Fund, into which shall be deposited the proceeds of the bonds, the proceeds from the sale of the lands acquired by the Board, and from such other money as shall be appropriated for the purpose by the Legislature in accordance with the Constitution and laws of the State. Also all lands purchased by the Board until the sale thereof shall be held for the benefit of the Fund. A Reserve created and maintained within the Fund is pledged irrevocably to the payment of the principal of and interest on the Bonds and is to be administered and used in the manner prescribed in the Resolution." (Emphasis added.)

The aforesaid Constitutional provision further states:

"The lands of the Veterans' Land Fund shall be sold by the State to Texas veterans of the present war or wars, commonly known as World War II, and to Texas veterans of service in the armed forces of the United States of America subsequent to 1945 as may be included within this program by legislative act, in such quantities and on such terms, and at such prices and rates of interest, and under such rules and regulations as are now provided by law, or as may hereafter be provided by law."

The following provisions of the Veterans' Land Act (Article 5421m, V.C.S.) deal with sales of land by the Board:

Section 2(A) authorizes the Veterans' Land Board "to provide by resolution for the use of the Veterans' Land Fund in such manner as to effectuate the intention of the Constitution and of the law; . . . to provide for the forfeiture of contracts of sale and purchase and the resale of forfeited land; . . . and to formulate such policies, rules and regulations as may be necessary, not in conflict with the provisions of the law, to insure the proper administration of the law and to carry out the intent and purposes thereof."

Section 8 of the Act provides:

". . . All lands previously sold by
the Board, upon any re-possession for any
cause by the acts of the purchasers or any
other lawful reasons, shall again become a
part of said Veterans' Land Fund."

Section 13 provides:

"Land shall not be sold at less than
its actual cost to the Board, except that
forfeited land may be resold under the
provisions of Section 19(A) hereof at less
than its actual cost to the Board. . . ."

Section 14 lists the veterans entitled to the benefits
of the Act.

Section 19(A) contains rules for the sale of forfeited
land to be held "at such times and in such manner as the Board
may prescribe".

Section 21 authorizes the Board to make rules and
regulations not inconsistent with the Act which shall be con-
sidered a part of the Act.

Section 23 provides for the sale of land remaining
unsold on December 1, 1959.

It is clear to us that repayment of the Veterans'
Land Bonds was intended to be secured by the lands purchased
through the Veterans' Land Program and the proceeds from the
sale thereof.  The method of handling the "block deal" in
question does not alter the fact that Veterans' Land Fund monies
were expended in the original purchase of same and that said
fund has not been reimbursed for such expenditure.  When the
land was first bought by the Board, the land became a part of
the Fund.  When, under judgment of the Court, title was revested
in the seller subject to the note and deed of trust in favor of
the State, such indebtedness and lien securing same were a part
of such Fund.  If such lien is foreclosed and the land is bid in
by the State, such land will again become a part of the Fund.
We answer question No. 1 in the affirmative.

As to the sale of the land after foreclosure by the
State, it is noted that Article 4401, R.S., sets out the pro-
cedure for bidding in property for the State on foreclosure
sales, and Article 4403, R.S., provides for the subsequent

sale or other disposition thereof by the agent or attorney bidding the property in for the State, with the advice and consent of the Attorney General "in the manner acquired and upon such terms and conditions as he may deem most advantageous to the State". We do not think that Article 4403 is applicable to sales of land from the Veterans' Land Fund.

Said fund is a special Constitutional Fund and is governed by the provisions of the Constitution set forth above, wherein the land is required to be sold to designated Texas veterans (see Section 14 of Article 5421m) "in such quantities, and on such terms, and at such prices and rates of interest, and under such rules and regulations as are . . . provided by law".

The Legislature cannot alter the Constitutional requirement that land be sold only to veterans. (See Section 23 of the Act.) As to the terms of sale, as now provided by law, see Sections 12, 13, 15, 16, 17, 19(A) and 23 of the Veterans' Land Act, and the rules and regulations of the Board authorized under Section 21 of said Act.

The Constitution, as aforesaid, provides for the sale of lands of the Veterans' Land Program under terms, regulations, etc. as may be provided by law. The provisions of the Veterans' Land Act are detailed and plenary; and, in our opinion, they, along with the aforesaid Constitutional requirements, form the complete rule and guide for the disposal of land belonging to the Veterans' Land Fund. This answers your second question. We are of the opinion that Article 4403, supra, is not applicable in any degree to the sale of such lands. That statute is a general law, whereas the Veterans' Land Act deals specifically with lands of the Veterans' Land Program.

In San Antonio and A. P. Ry. Co. v. State, 128 Tex. 33, 95 S.W.2d 680, 687 (1936), it is said:

"The rule is well recognized that, in ascertaining the intention of the Legislature, which must always govern in the construction of statutes, where seeming or real repugnant provisions appear, the specific statute more clearly evidences the intentions of the Legislature than the general one, and therefore it will control."

Your third question inquires as to whether any of said procedure conflicts with Article 5416, R.S. This article describes the lands belonging to the State Permanent School

Fund. Sale of such lands is under the jurisdiction of the School Land Board. Article 5421c-3, V.C.S.

In Opinion No. V-782 of this office, written in 1949 by Honorable Ben H. Rice, III, Assistant Attorney General, the authorities were exhaustively reviewed and the opinion concluded that previously patented lands re-acquired by the State for a special legislative purpose were not a part of the "unappropriated public domain" and were not a part of the Permanent School Fund. Copy of said opinion is attached. The Legislature has recognized that such lands are not school lands. See Article 5382d, V.C.S., and especially Section 16 thereof. The lands of the Veterans' Land Fund, as above pointed out, are dedicated by the Constitution and statute for a special purpose, and their method of sale is designated therein. In our opinion, they form no part of the Permanent School Fund. We answer question No. 3 in the negative.

## SUMMARY

Land on which the Veterans' Land Board has a deed of trust lien by virtue of the rescission of a "block deal" in a 1956 judgment of the Court, will, if foreclosed on and bid in by the State, become a part of the Veterans' Land Fund. The subsequent sale of same by said Board will be governed by the requirements set out in Article 3, Section 49-b, Texas Const., and Article 5421m, V.C.S. Such lands, when acquired by the State, will not be a part of the State Permanent School Fund.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

JAS:afg

Honorable Jerry Sadler, page 6 (WW-1010)


APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

L. P. Lollar
Leon Pesek
Martin DeStefano

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore