

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

October 22, 1965

Honorable Henry Wade
District Attorney
County Records Building
Dallas, Texas

Opinion No. C-533

Re: Whether Dallas County Junior
College District May Tax the
Intangible Property and
Rolling Stock of Railroads
or Transportation Companies
and Other Questions Relat-
ing to Such District.

Dear Mr. Wade:

You have requested that we reconsider Opinion No. C-458
of this office dated June 21, 1965, pertaining to the taxation
by the Dallas County Junior College District of intangible
assets and rolling stock of railroads or transportation com-
panies.

Said Opinion C-458 is hereby withdrawn and the follow-
ing is substituted therefor.

You ask the opinion of the Attorney General in answer
to the following five (5) questions relating to the levy
and assessment of ad valorem taxes by Dallas County Junior
College District:

1. Can a valid contract for the assessment
and collection of taxes be entered into
by the Board of Trustees of Dallas County
Junior College District and the County
of Dallas for the Tax Assessor and
Collector of Dallas County to assess and
collect the taxes for the Junior College
District?

2. In the event that the answer to Question
No. 1 is in the affirmative, what fees and
commissions can the Tax Assessor and
Collector of Dallas County legally charge
the Dallas County Junior College District
for the assessment and collection of the
above referred to taxes?

3. Can taxes be levied and collected for the
year 1965?

-2546-

4. May the District tax intangible properties within its boundaries?

5. Can the District assess and levy a tax on the rolling stock of a railroad or transportation company?

The relevant facts are as follows:  The Dallas County Junior College District (hereinafter referred to as District) was created on May 25, 1965, pursuant to the provisions of Article 2815h of Vernon's Civil Statutes.  The boundaries of the District are coterminous with the boundaries of Dallas County.  At the election, the voters elected a Board of Trustees of the District and granted them the authority to assess and levy a tax for the support and maintenance of the District and to issue bonds to be paid for by a tax which was also authorized.

We answer your questions in the order in which you ask them.

1.

Your first question asks if the District may contract with the Tax Assessor and Collector of Dallas County to assess and collect its ad valorem taxes.  Our answer is that it may enter into such a contract pursuant to the provisions of Sec. 7b(c) of said Article 2815h.  This Article in its relevant portions reads as follows:

> "When a majority of the Board of Education of such Junior College District prefer to have the taxes of their district assessed and collected by the County Assessor and Collector, or by the City Assessor and Collector of an incorporated city or town in the limits of which the Junior College District or a part thereof is located, or collected only by the County or City Tax Collector, same may be assessed and collected, or collected only, as the case may be, by said county or city officers, as may be determined by the Board of Education of said Junior College District, and turned over to the Treasurer of the Junior College District for which such taxes have been collected. . . ."

2.

Your second question asks what fees and commissions may be paid in the event we answer your first question in the affirmative. Our answer is that the following provision of said Article 2815h, Sec. 7b(c) sets forth these fees and commissions in the following language:

> ". . . When the County Assessor and Collector are required to assess and collect the taxes on Junior College Districts they shall respectively receive one (1%) per cent for assessing and one (1%) per cent for collecting same; . . ."

3.

Your third question asks whether the District can levy and collect taxes for the year 1965. Our answer is that it can.

Under the following authorities, the levy and assessment of taxes by the District is governed by the same laws governing taxation by independent school districts.

a) Section 7 of said Article 2815h provides, in part:

> ". . . The issuance of the bonds for Junior College purposes, and the provision of the sinking fund for the retirement thereof, and the payment of interest and the levying of taxes for the support and maintenance of the Junior College, shall in so far as same is applicable, be in accordance with the general election laws and the laws governing the issuance of bonds and the levying of taxes in the Independent School District, . . ."

b) Section 7a of said Article 2815h (Acts 1937, 45th Leg., p. 248, ch. 130, sec. 3) further provides, in part:

> "The Assessor and Collector of such Junior College District shall assess the taxes and collect the same in the manner now provided by law for the collection

> of ad valorem taxes by County Assessors
> and Collectors and where there is not
> herein contained any specific provision
> or direction as to how anything connected
> with the assessment and collection of
> taxes shall be done, then the provisions
> of the General Law shall prevail. . . ."

c) The case of Shepherd v. San Jacinto Junior College District, 363 S.W.2d 742 (Tex.Sup. 1963), holds that Section 3 of Article VII of our State Constitution pertaining to taxation for benefit of schools and school districts is applicable to Junior College Districts.

Although the college district was not created until May 25, 1965, the district has the authority to levy and collect taxes for the year 1965 on all property within such newly created district which was owned by the taxpayers on January 1st. Blewitt v. Megargel County Line Ind. Sch. Dist., 285 S.W. 271 (Comm.App. 1926); Yorktown Independent School District v. Afferbach, 12 S.W.2d 130 (Comm.App. 1929); Cadena v. State, 185 S.W. 367 (Tex.Civ.App. 1916, error ref.).

The Court in Blewitt v. Megargel, supra, stated:

> ". . . when an independent school
> district is created after the 1st of
> January of a given year, all property
> within such newly created district,
> which was owned by the taxpayer on Jan-
> uary 1st of that year, 'is subject to
> any tax authorized by law, whether
> such taxes have been authorized there-
> tofore or may be authorized during the
> year, and can be levied by the body
> given the power to levy at any time
> during the year.' . . ." (Underscoring
> added.)

## 4. and 5.

In your fourth question you ask if the District may tax intangible properties within its boundaries. (You do not mention intangible assets of railroads or other companies). We presume that in your fourth question you meant to ask whether the District might use the intangible values determined by the State Tax Board for railroads and other companies

enumerated in Articles 7105 and 7105a of V.C.S. We will answer this question acting upon this presumption. The other companies mentioned are ferry companies, bridge companies, turn pike companies, toll companies, oil pipe line companies, all common carrier pipe line companies of every character whatsoever engaged in the transportation of oil, motor bus companies, common motor carriers operating under certificates of convenience and necessity issued by the Railroad Commission, and contract motor carriers operating under contract motor carrier permits issued by the Railroad Commission. We answer this question in the negative.

In answer to the fifth question, the District may not tax the rolling stock of railroads. As to the taxation of rolling stock of other transportation companies, we express no opinion as it is necessary to know the facts in each particular case, since the taxation of said property falls within the same general category of taxing personal property of any owner except railroads and other companies above mentioned.

There is no particular provision in the statutes providing for the situs and valuation of rolling stock of other transportation companies and that is to be determined by the general law with reference to the situs of personal property for taxation. For that reason we decline to pass upon that matter without knowing the specific facts pertaining to each company.

Article VIII, Sec. 8 of the Texas Constitution provides as follows:

> "Railroad Property; How Assessed. - All property of railroad companies shall be assessed, and the taxes collected in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county. The rolling stock may be assessed in gross in the county where the principal office of the company is located, and the county tax paid upon it shall be apportioned by the Comptroller, in proportion to the distance such road may run through any such county, among the several counties through which the road passes, as part of their tax assets."

Article 7168, V.C.S., provides for the sworn rendition of property made by railroads to the county assessor and provides for rendition of all personal property of a railroad except the rolling stock.

Article 7169 provides that the value determined by the County in which the principal office of the road is located shall be certified to the State Comptroller and by him certified and apportioned to each county in proportion to the mileage of the railroad in each county.

Articles 7105 - 7113, inclusive, V.C.S., provide for the determination of the value of the intangible assets of railroads and other companies by the State Tax Board and for apportionment of the values between the counties according to the mileage of the road in each county. The intangible values of motor bus companies, common carrier motor carriers, and contract motor carriers are likewise apportioned in the counties in proportion to the distance the lines traversed by said carriers in each respective county.

The original Act (now Article 7105, V.C.S.) provided for the taxation of the intangible assets of railroads only, but said Act has been amended, as shown by said Article, to include ferry companies, bridge companies, turn pike or toll companies, oil pipe line companies, oil common carrier pipe line companies of every character, motor bus companies, and common carrier motor carriers operating under certificates issued by the Railroad Commission. We are interested only in the question as to whether the district may tax the intangible assets of a railroad and other transportation companies above mentioned.

Opinions of the Attorney General's office ranging as far back as 1909 and court decisions hold that the rolling stock and intangible assets of a railroad are not subject to taxation by school districts and other subdivisions of the county.

In Attorney General's Departmental Opinion No. 2794, Book 63, page 320, dated December 20, 1929, (page 246 Biennial Report 1928-1930), it was held that the intangible property and rolling stock of railroads are not subject to taxation by a school district even though the district comprises an entire county.

In Opinion dated January 24, 1938 (Letter Book 379, pages 779-783) it was held that the Nueces County Navigation District No. One, which district had the same boundaries as the county, could not tax the intangible assets of railroads and pipe line companies for the reason that such tax would not be a State and County tax.

In Opinion No. 0-7469 dated October 29, 1946, it was held that a junior college district which has boundaries coextensive with the county cannot tax the intangible assets or rolling stock of a railroad.

Opinion No. S-184 dated December 30, 1955, held that the rolling stock and intangible assets of a railroad are not subject to taxation by the Bexar County Hospital District which is coextensive with the boundaries of the county.

We approve the holdings in said four opinions.

In State v. H. & T. C. Ry. Co., 209 S.W. 820 (C.C.A. 1919) it was held that the intangible property and rolling stock of a railroad were not subject to taxation by a navigation district in Harris County, even though the boundaries of the district and the county were the same, and it further said that the district had no power of taxation except as is expressly conferred upon it by the law of its creation. The Court also said:

> "The intangible assets and rolling
> stock of appellee is not property 'within
> said district,' within the meaning of the
> Constitution and statutes, and, the power
> of the district to tax same not being
> expressly granted by the act of its crea-
> tion, the tax proposed to be levied is
> unlawful."

In order for the rolling stock and intangible assets of a railroad to be taxed, it is necessary that the tax be a county tax. In Bell County v. Hines, 219 S.W. 556 (C.C.A. 1920, error ref.), the Court distinguished the H. & T. C. Ry. Co. case above mentioned. The facts in that case are that Bell County, under the constitutional provision, Article III, Section 52 and Act of 1907 (Article 778a, et seq., V.C.S.), voted bonds for the construction of roads and since the tax thereby became a county tax, the Court held that the intangible assets and rolling stock of railroads are subject to taxation. In this case, Bell County alone had voted bonds under the same act as the two counties in the case of State v. T. & P. Ry. Co., 62 S.W.2d 81 (Tex.Com.App. 1933), and the Court in the Bell County case said:

> "We do not think that the case of State
> v. Railway Co., 209 S.W. 820, is an authority
> as to the issue involved in this case. That
> was a suit to collect taxes for the use and
> benefit of the Harris county ship channel
> navigation district, on the intangible assets
> and rolling stock of the railway company
> which had been apportioned to Harris county.
> The boundaries of the navigation district

were the same as the boundaries of Harris
county, but it was not Harris county. On
the contrary, it was a body corporate, a
separate legal entity, capable of suing
and being sued as such. In that case the
court held that, while the Legislature
might have authorized the district to levy
a tax on the intangible assets and rolling
stock of the railway company, it had not
done so, for the reason that it had autho-
rized the tax to be levied upon property
'within said district'; and, while recog-
nizing the power of the Legislature to fix
the situs for taxation of all personal pro-
perty, as it had not fixed the situs of
rolling stock and intangible values for
taxation for district purposes in any dis-
trict, the navigation company had no power
to tax such property. Reference is here
made to the case above referred to, and
the authorities there cited, for a full
discussion of the question of taxing in-
tangible assets and rolling stock.

"For the reason that we have concluded as
a matter of law that the road bonds issued by
Bell county were county bonds, issued for a
county purpose, that the tax levied by the
commissioners' court is a county tax, and
that the intangible assets and rolling stock
of appellee apportioned to Bell county for
state and county taxation are the property
of such county for the purpose of taxation,
the judgment of the trial court is here
reversed and judgment is here rendered for
appellant."

In State v. T. & P. Ry. Co., supra, the Court said:

". . . The standard by which such appor-
tionment is to be made by the board is pres-
cribed in the act. The conclusion reasonably
follows that, by these apportionment provisions
of the statutes, the Legislature intended that
such apportionment, when made as prescribed,
would fix the situs of each portion in accord-
ance with the allocation made by the board. It
is quite true, as contended by counsel, that In

the intangible tax law, it is provided in
effect (article 7105) that intangible
assets may be taxed for state and county
purposes, and it is further true that
no provision in that law affords legislative
authority for the taxing of such assets for
any other purpose or for the benefit of any
other public corporation or agency. But it
is reasonably clear that authority in this
respect is, by the act of 1927, first
mentioned above, given to road districts
composed of two or more counties. It is
there provided, in effect, that the tax to
pay the bonds, there provided for, shall
be levied 'against the property in each
of the counties, respectively.' This
language, in the connection used, plainly
comprehends all property situated, either
actually or by operation of law, in any
of the counties as such." (Emphasis added.)

The opinion concluded as follows:

"As regards the value of the rolling
stock which, under the provisions of
article 8, § 8, of the Constitution,
and of article 7169 of the statutes, was
apportioned by the state comptroller to
El Paso county, the situs for taxation
purposes became fixed in that county.
The reasons upon which this conclusion
is based are substantially the same as
those upon which our conclusion res-
pecting intangible assets is based. In
both instances, the situs became fixed
in the county at large, but not, of
course, in any particular portion of the
county."

We believe that the Court in the T. & P. case correctly
held that the railroad was liable for the tax on its intangible
assets and rolling stock and further believe that it could also
have held that the tax was a county tax as held in the Bell
County case above mentioned. We believe that this is probably
the reason the Supreme Court only approved the judgment, and
not the opinion, of the Commission of Appeals. The Supreme
Court refused writ of error in the Bell County case.

The Constitution, Article III, Sec. 52, reads in part as follows:

> ". . . under legislative provision any county, any political subdivision of a county, any number of adjoining counties or any political subdivision of the State or any defined district now or hereafter to be described and defined within the State of Texas, . . . upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit:"

The Constitution does not say that the two counties constitute a district, but says that each county may vote bonds and levy a tax for the same. This clearly shows, as held in the Bell County case, that if the county issues the bonds, the tax for payment thereof is a county tax.

The original enabling act under the above provision of the Constitution was contained in the act of 1907, page 249, and only authorized the bonds to be issued by "a county or a political subdivision of a county." A later act of 1909, page 271, amended the 1907 act so as to add "district, now or hereafter to be described and defined, of a county." The original act of 1907 with the changes made in 1909 were carried forward as Article 627, R.C.S., 1911.

It was not until 1927 that a separate act which is now Article 778a - 778i, V.C.S., authorizes bonds to be issued for roads by "any number of adjoining counties" and provides that the counties are authorized to issue bonds for such purposes and "to levy and collect annually ad valorem taxes" to pay for the same. It is, therefore, relevant to notice that both the Constitution and the Act of 1927 provide that the

counties are authorized to levy the taxes to pay for the bonds.
We submit, therefore, that under the reading of the Constitution
and the first section of the Act, it is clearly provided that
the tax for the payment of the bonds is a county tax.

It is true that other sections of the 1927 act provide
for what is denominated a "road district composed of two or
more adjoining counties" (Articles 778b, et seq.). However,
even though the area of the adjoining counties are mentioned
in the act as "districts", yet it is clear that it is intended
that the tax levied to pay the bonds is a county tax as shown
by Section 9 (Art. 778i) which reads as follows:

> "The amount of the bond tax to be levied
> annually shall be determined by the commis-
> sioners' courts of the respective counties
> before the period at which the annual levy
> of taxes is made in the counties composing
> said district, and the proportion of the tax
> levied against the property in each of the
> counties, respectively, shall be levied
> by the commissioners' court of such county
> at the same time and in the same manner
> that other taxes in such counties are levied,
> and the levy and collection thereof shall be
> governed by the same laws that govern the
> levy and collection of county taxes. . . ."
> (Emphasis added.)

We submit that it is clear that the tax provided for
under the 1927 Act for adjoining counties, even though called
a district, is a county tax and that the Court properly held
that the railroad was liable for the same as the district
was composed of El Paso and Hudspeth counties and could have
given that reason for its holding. It was the 1927 Act that
gave the two counties authority to levy the tax.

This, then, brings us to the question as to whether the
Act authorizing the creation of the Dallas County Junior
College District which has the same boundaries as Dallas County
authorizes the district to tax the intangible assets and roll-
ing stock of railroads. This requires an examination of the
Junior College District Act. The statute authorizing the crea-
tion of Junior College Districts is found in Article 2815h,
V.C.S.

Section 17 of the Act authorizes the formation of County
Junior College Districts in counties which would include Dallas
County.

Article 2815h-3b, Section 1 provides that the governing boards of all public Junior Colleges have power to issue bonds for the District and further provides that the total amount of tax levied shall never exceed One Dollar ($1.00) valuation of property "in the Junior College District".

Section 2a under the same Article provides for an annual ad valorem tax not to exceed One Dollar ($1.00) rate of taxable property "within the District" for the maintenance of schools and further provides that the amount of maintenance and bond tax "of the district" shall never exceed the rate of One Dollar ($1.00).

Section 22 of Article 2815h provides that all taxes levied for County Junior College Districts "shall be assessed and collected in the manner provided in Section 7b and 7c." (A footnote to this Article, page 637, V.C.S., states that this Section probably should read "Section 7a and 7b". This is true for two reasons, to wit: There is no "Section 7c". There are two Sections "7a" at page 627 but the first applies only to districts operating prior to October 1, 1936. Therefore, we will look to the other Section 7a and also to 7b.)

Section 7a provides for assessing and collection of taxes by the Assessor and Collector "of the District", and for the Board of Education to appoint a Board of Equalization to equalize the value of all property subject to taxation "in said District".

Section 7b (c) provides that where a district has the County Assessor to assess the taxes that it may be assessed at a "greater value than that assessed for <u>county and State purposes</u>" and in such cases the Assessor shall assess the taxes "for said <u>district</u> on separate blanks furnished by said <u>district</u> and prepare the rolls for said district". (Emphasis added). This shows that the tax is not for a county tax, or it would not and could not have separate values and separate rolls.

We see, then, that under the authority of the above H. & T. C. Ry. Co. case, the intangible assets and rolling stock of a railroad are not property within the junior college district even though the boundaries of the district are the same as the county boundaries, for the reason that in each of the Articles above mentioned, it is not provided for the taxation of property "in the county" as was done in the Act of 1927 and county wide bonds. For this reason, the decision in the T. & P. Ry. case has no application whatever to junior

college districts, even though the boundaries of the county and the district are the same. The statutes do not "in effect", as stated in the T. & P. Ry. case, authorize the levy of taxes against all property "in the county", for the reason that the statutes provide only for the levy of taxes "in the district." As stated by the T.& P. Ry. case, the situs of the rolling stock and intangible assets of a railroad are liable only for state and county taxes unless there is some other act in addition to the original act authorizing the taxing of such property for other than State and County taxes.

## S U M M A R Y

Answering questions pertaining to Dallas County Junior College District, created pursuant to Article 2815h, V.C.S. on May 25, 1965:

1. It may contract with the Tax Assessor and Collector of Dallas County to assess and collect its ad valorem taxes.

2. The fees and commissions of such Tax Assessor-Collector for his services are 1% for assessing and 1% for collecting.

3. The District may levy and collect taxes for the year 1965.

4. Said District does not have authority to tax the intangible assets of railroads and other companies mentioned in Articles 7105 and 7105a, V.C.S.

5. Said District does not have authority to tax the rolling stock of railroads.

6. No opinion is expressed as to the taxation of rolling stock of other transportation companies.

7. Attorney General's Opinion No. C-458 (June 21, 1965) is hereby withdrawn and this opinion is substituted in lieu thereof.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By _____
   H. Grady Chandler
   Assistant

HGC/fb

APPROVED:

OPINION COMMITTEE
W. O. Shultz, Chairman
Kerns B. Taylor
Paul Phy
John Banks
J. C. Davis

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright